**KENTUCKY BAR ASSOCIATION,**
Movant

v.

**Lawrence R. CARMICHAEL,**
**Respondent.**

**No. 2007–SC–000528–KB.**

Supreme Court of Kentucky.

Jan. 24, 2008.

## OPINION AND ORDER

SCOTT, Deputy Chief Justice.

The Board of Governors of the Kentucky Bar Association has recommended to this Court that Lawrence R. Carmichael, whose bar roster address is P.O. Box 1023, Somerset, Kentucky, 42501, and KBA number is 81644, be permanently disbarred from the practice of law. The Board's decision is based on Carmichael's federal criminal conviction of attempted extortion, which the Board found constitutes a violation of both SCR 3.130–8.3(b) and SCR 3.130–8.3(c). Carmichael now seeks a review of the Board's Recommendation pursuant to SCR 3.370(8). After examining the parties' briefs and the applicable law, we concur with the Board's recommendation and deem permanent disbarment the appropriate penalty for Carmichael's misconduct.

Carmichael was admitted to practice law in the Commonwealth of Kentucky in 1986. In January 1994, Carmichael was sworn in as the elected Commonwealth's Attorney for the 28th Judicial District, consisting of Pulaski, Rockcastle, and Lincoln Counties in Kentucky. Four years later, on August 12, 1998, Carmichael was indicted in the United States District Court for the Eastern District of Kentucky for extortion and attempted extortion in violation of 18 U.S.C. § 1951. Both charges involved Carmichael's interaction with Rodney Adams, who owned and operated a pawnshop located in Somerset, Kentucky. The extortion charge was based on Carmichael's alleged request in December 1997 that Adams, who had been arrested in November of 1997, provide him with $500 for Christmas decorations for the Commonwealth's Attorney's office. This charge was dismissed, however, when the District Court granted Carmichael's Motion for a Judgment of Acquittal during his October 1998 trial. The attempted extortion charge was based on Carmichael's conduct in January and March of 1998. On or about March 19, 1998, Carmichael, in a meeting with Adams's lawyer, attempted to extort between $50,000 and $100,000 from Adams in exchange for Carmichael agreeing not to prosecute Adams for his illegal gambling ventures. A few days later, after Adams's attorney told Adams what Carmichael had proposed, Adams contacted the Kentucky State Police. After investigating Carmichael for over a week, during which Carmichael and Adams, who was under police supervision, continued to meet and discuss the arrangement, the police arrested Carmichael.

On October 9, 1998, the jury returned a guilty verdict on Carmichael's attempted extortion charge and as a result, Carmichael's law license was suspended pursuant to SCR 3.166. This Court entered an Order on December 17, 1998, confirming Carmichael's automatic temporary suspension. *KBA v. Carmichael*, 982 S.W.2d 202 (Ky. 1998). On January 22, 1999, the District Court sentenced Carmichael to 27 months in prison followed by two years of supervised release. By November 2004, Carmichael had exhausted all of his appeals, prompting the Inquiry Commission to begin the current proceedings.

On May 28, 2005, the Inquiry Commission charged Carmichael with violating SCR 3.130–8.3(b), which states that it is professional misconduct for a lawyer to "commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects," and SCR 3.130–8.3(c), which prohibits a lawyer from engaging "in conduct involving dishonesty, fraud, deceit, or misrepresentation." On March 22, 2007, after Carmichael's hearing, the Trial Commissioner concluded in his report that Carmichael was guilty of both charges and

recommended that he be permanently disbarred from the practice of law. Carmichael appealed this recommendation to the Board of Governors, who heard the appeal on June 19, 2007. After first voting to review Carmichael's case *de novo*, 11 members of the Board of Governors also recommended that Carmichael be permanently disbarred, while 7 recommended that he be suspended for fifteen years retroactively to the date of his temporary suspension. Thereafter, Carmichael filed a notice of review pursuant to SCR 3.370(8).

Although Carmichael does not contest that he violated SCR 3.130–8.3(b) and (c), he does argue that certain evidence that calls into question his underlying criminal conviction should be considered by this Court to mitigate his penalty. Carmichael contends that a 2004 letter written by Adams and the testimony of Fred Peters imply that Adams falsely testified during Carmichael's 1998 criminal trial.[1] Even though the Trial Commissioner properly excluded this evidence as inadmissible hearsay, Carmichael contends that it should nonetheless be considered by this Court as a mitigating circumstance. We disagree.

■■■ This Court has been clear that in disciplinary proceedings, the fact of a criminal conviction "forecloses further inquiry into the issue of respondent's guilt or innocence of the [criminal] offense." *KBA v. Lester*, 437 S.W.2d 958, 959 (Ky.1968). *See also KBA v. Rorrer*, 222 S.W.3d 223, 227 (Ky.2007); *Marsh v. KBA*, 28 S.W.3d 859, 860 (Ky.2000). In other words, Carmichael's federal conviction is "conclusive proof" that he committed the crime of attempted extortion as alleged in his indictment. *See KBA v. Horn*, 4 S.W.3d 135, 137 (Ky.1999). Since Adams's 2004 letter and Peters's testimony question whether Carmichael is guilty of a crime of which he has already been convicted, they will not be considered as mitigation evidence in his disciplinary proceeding. Therefore, the only issue left before this Court is whether permanent disbarment is the appropriate penalty for Carmichael.[2]

Carmichael argues that permanent disbarment is appropriate only in cases where there is no possibility of character rehabilitation and where there is an established pattern of unethical behavior. However, Carmichael does not cite any Kentucky cases that mandate such requirements. On the contrary, this Court has disbarred attorneys who have committed financial misconduct even when they have made efforts to rehabilitate themselves and even when they had committed merely a single offense. In *KBA v. Rice*, 229 S.W.3d 903 (Ky.2007), this Court permanently dis-

---

1. Carmichael explains that sometime in 2002, he learned from one of Adams's family members that Adams wanted to help him. Carmichael then contacted Fred Peters, who was representing Carmichael in his post-conviction motions. In 2003, Peters went to visit Adams at the Fayette County Detention Center, where he was being held pursuant to his 17–year sentence for federal drug-trafficking and money-laundering. After this meeting, Carmichael prepared an affidavit outlining what Adams apparently told Peters and sent it to Peters, who then sent it to Adams. However, in a May 2004 letter responding to this affidavit, Adams stated that he would not sign the affidavit until a federal judge gave him immunity from a possible perjury charge. Carmichael argues that Adams's May 2004 letter and Peters's testimony about what Adams told him during their meeting should be considered in this proceeding as mitigating evidence.

2. Since this Court has determined that Adams's 2004 letter and Fred Peters's testimony are not proper mitigation evidence, we decline to address Part I of Carmichael's argument, which contends that this evidence is admissible because it is not hearsay, or in the alternative, because it fits a certain hearsay exception.

barred an assistant Commonwealth's attorney who engaged in identity theft and charged $14,332 on a credit card he had created under someone else's name. Even though Rice had no prior disciplinary record, had made efforts to maintain employment, had complied with the terms of his probation, had engaged in no further criminal activity, and had expressed remorse for his conduct, this Court nonetheless ordered that he be permanently disbarred. *Id.* at 904–905. In addition, in *KBA v. Rorrer,* 222 S.W.3d 223, 227 (Ky.2007), Rorrer was permanently disbarred not due to his pattern of unethical behavior, but rather, because of his single money-laundering charge.

Furthermore, in arguing that permanent disbarment is not appropriate in this instance, Carmichael has ignored this Court's clear precedent for taking seriously the criminal financial misconduct of lawyers. *KBA v. Rorrer,* 222 S.W.3d 223, 227 (Ky.2007); *See KBA v. Tanner,* 152 S.W.3d 875 (Ky.2005) (permanent disbarment of attorney convicted of embezzlement); *KBA v. Matthews,* 131 S.W.3d 744 (Ky.2004) (permanent disbarment of attorney convicted of bank fraud); *Dickey v. KBA,* 98 S.W.3d 864 (Ky.2003) (permanent disbarment of attorney convicted of conspiracy to commit securities fraud); *Caudill v. KBA,* 155 S.W.3d 725 (Ky.2005) (permanent disbarment of attorney convicted of embezzlement and theft by failure to make required disposition). Although Carmichael is correct to note that each KBA disciplinary proceeding is different and warrants a case-by-case basis review, the fact remains that attempted extortion constitutes serious criminal financial misconduct, for which permanent disbarment may be an appropriate penalty depending on the mitigating and aggravating factors.

The mitigating factors considered by the Trial Commissioner were Carmichael's good reputation, his success in re-integrating himself in the Somerset community, and his absence of a prior disciplinary record. The first aggravating factor considered was the fact that Carmichael continued to serve as the Commonwealth's Attorney until his term expired on December 31, 2000, even though he was sentenced on January 22, 1999, and began serving his criminal sentence on March 1, 1999. Carmichael disputes this aggravating factor, citing *Cornett v. Judicial Retirement and Removal Commission,* 625 S.W.2d 564 (Ky.1981), for the premise that until all of his appellate remedies have been exhausted, he cannot be removed from office and thus, should not be penalized for failing to resign.

In *Cornett,* this Court held that because Judge Cornett's appeal from his racketeering conviction was still pending before the Sixth Circuit, there was "no 'conviction' which could at this time form the basis for the entry of an order removing him from office. Conviction, as used in SCR 4.020(1)(b)(vii), means a determination of guilt which, if appealed, has been affirmed by the court of last resort to which the conviction is carried." *Id.* at 568–569. In Carmichael's case, the Sixth Circuit affirmed his attempted extortion conviction on October 20, 2000, and Carmichael did not file his notice to seek a post-conviction appeal until November 19, 2001. Thus, according to the limited holding of *Cornett,* Carmichael had at least until October 20, 2000, before he could have been removed from his office as Commonwealth's Attorney. Although perhaps Carmichael should have resigned upon his conviction being affirmed, we do not consider the two-month time frame after the Sixth Circuit rendered its opinion but before his term of office expired to amount to a determinative aggravating circumstance.

The aggravating factor this Court does find troubling, however, is Carmichael's position of authority and influence as the elected Commonwealth's Attorney for the 28th judicial district. In the past, this Court has disbarred other public officials for abusing their office's power for their own selfish gains. In *KBA v. Layton,* 97 S.W.3d 452 (Ky.2003), this Court ordered that Layton be permanently disbarred due to his misappropriation of funds from his account as Master Commissioner of Jessamine and Garrard Counties. Similarly, in *King v. KBA,* 162 S.W.3d 462 (Ky.2005), King was permanently disbarred after being convicted of 132 counts of theft by failure to make required disposition of property while acting as the Master Commissioner for McCreary Circuit Court.

■ This Court is also disturbed by the fact that Carmichael was the lead prosecutor for the Commonwealth when he attempted to extort money from Adams. As noted *supra,* this Court disbarred an assistant Commonwealth's attorney for identity theft and credit card fraud in *KBA v. Rice,* 229 S.W.3d 903 (Ky.2007). In *Rice,* the Board of Governors originally recommended a five year suspension; however, this Court, after filing its own notice of review pursuant to SCR 3.370(9), ordered that Rice be permanently disbarred. *Id.* at 904. Although there were other aggravating factors present in *Rice,* such as Rice's flight from the jurisdiction while awaiting trial in order to take a teaching job in China and his failure to recognize how the credit card offenses related to his job as a prosecutor, this Court's independent decision to review the case and its subsequent order of disbarment demonstrates the seriousness with which this Court takes criminal financial misconduct perpetrated by prosecutors. *Id.* at 904–905. In this case, Carmichael used his position as the elected Commonwealth's Attorney to extort a large sum of money from someone whom his office should have

been prosecuting. Carmichael was found to have met with Adams on at least two separate occasions while Adams was under the supervision of the Kentucky State Police: at the first meeting, they discussed the payment of the money; at the second meeting, Carmichael obtained $5,000 from Adams and Adams promised to obtain the rest of the money soon. Although Carmichael does not have a prior disciplinary record and now has a good reputation in Somerset, we agree with the Board of Governors that such a flagrant abuse of authority and disregard for the law warrants permanent disbarment. ACCORDINGLY, IT IS HEREBY ORDERED THAT:

(1) Respondent, Lawrence R. Carmichael, is permanently disbarred from the practice of law.

(2) In accordance with SCR 3.450, Carmichael is directed to pay all costs associated with these disciplinary proceedings against him, said sum being $2,714.62, for which execution may issue from this Court upon finality of this Opinion and Order; and

(3) Pursuant to SCR 3.390, Carmichael shall, within ten (10) days from the entry of this Opinion and Order, notify all clients, in writing, of his inability to represent them; notify, in writing, all courts in which he has matters pending of his disbarment from the practice of law; and furnish copies of all letters of notice to the Executive Director of the Kentucky Bar Association. Furthermore, to the extent possible, Carmichael shall immediately cancel and cease any advertising activities in which he is engaged.

All sitting, except LAMBERT, C.J., not sitting. All concur.